# UNITED STATES DISTRICT COURT

for the

**Northern District of New York**

SHEVAUN KASI MISTRY,  )
          *Plaintiff,*  )
          **-v-**  )
CORNELL UNIVERSITY; NEEMA  )
KUDVA; SHEA KYTOMAA;  )
SAMANTHA PENNELL; and LESLIE  )
LOK,  )
          *Defendants.*  )
    )
    )
    )
    )
    )

Case No.3:26-cv-_1419_ (ECC/ML)
*(to be filled in by the Clerk's Office)*

Jury Trial:  ☒ Yes   ☐ No

## COMPLAINT IN A CIVIL SUIT

Plaintiff Shevaun K. Mistry ("Plaintiff" or "Ms. Mistry"), by and through her undersigned counsel, LLG National Law Group, for her Complaint against Defendants Cornell University ("Cornell" or the "University"), Neema Kudva, Shea Kytomaa, Samantha Pennell, and Leslie Lok (the "Individual Defendants," and together with Cornell, "Defendants"), alleges as follows, upon personal knowledge as to her own acts and observations and upon information and belief as to all other matters:

## PRELIMINARY STATEMENT

1.  This is an action for national origin discrimination, retaliation, failure to timely pay wages, and breach of contract arising out of Ms. Mistry's employment as a Graduate Teaching Research Specialist ("GTRS") and her enrollment as a Master of Architecture ("M.Arch.") candidate at Cornell's College of Architecture, Art, and Planning ("AAP").

2.      Cornell awarded Ms. Mistry, a citizen of Canada, teaching assistantship positions as a stated component of her degree program, assigned her to teach, and accepted her labor for months without paying her. When Ms. Mistry complained in writing that the University was violating federal and state wage laws, the University's agents obstructed her course enrollment, permitted her F-1 immigration record to be closed through their own inaction, and made false statements to her concerning her employment and her academic record. A Senior Associate Dean, presuming Ms. Mistry to be from India, told her that "February Break isn't long enough to travel to India" and, when corrected, responded, "India, Canada, I don't discriminate." University Human Resources personnel later told Ms. Mistry that she "was not supposed to work this semester" and instructed her to "drop it now."

3.      On June 3, 2025, Ms. Mistry paid Cornell $17,000 in tuition. Six days later, Cornell issued a Notice of Required Withdrawal terminating her enrollment and, with it, her eligibility for the employment Cornell had promised her. Cornell took that action while written commitments from its own faculty to revisit provisional grades remained outstanding, and on the basis of an academic record that included a failing grade for a course in which Ms. Mistry maintains she was never properly enrolled.

4.      Ms. Mistry asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI"); the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. (the "NYSHRL"); Article 6 of the New York Labor Law (the "NYLL"); the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"); and New York common law.

**THE PARTIES**

5.     Plaintiff Shevaun K. Mistry is a citizen of Canada and is domiciled in Toronto, Ontario. At all relevant times, Ms. Mistry was enrolled as an M.Arch. candidate at Cornell and was employed by Cornell as a GTRS teaching assistant in the Department of Architecture. She was an "employee" of Cornell within the meaning of Title VII, the NYSHRL, the NYLL, and the FLSA.

6.     Defendant Cornell University is an education corporation organized under the laws of the State of New York, with its principal campus in Ithaca, Tompkins County, New York, and offices for service at 300 CCC Building, Garden Avenue, Ithaca, New York 14853 (Office of General Counsel: 118 Sage Place, Ithaca, New York 14850). Cornell employs more than five hundred persons, is an "employer" within the meaning of Title VII, the NYSHRL, the NYLL, and the FLSA, and is a recipient of federal financial assistance within the meaning of Title VI. At all relevant times, the Individual Defendants and the other Cornell personnel identified herein acted within the scope of their employment and agency, and Cornell is responsible for their acts and omissions under the doctrine of respondeat superior. The College of Architecture, Art, and Planning and its Department of Architecture are unincorporated academic units of Cornell and not separate jural entities; references herein to AAP or the Department describe the units through which Cornell acted, and their acts are the acts of Cornell, including for purposes of the administrative charge, which named the Department of Architecture (AAP).

7.     Defendant Neema Kudva was at all relevant times Senior Associate Dean for Academic Affairs of AAP, with a business address at the College of Architecture, Art, and Planning, 129 Sibley Dome, Cornell University, Ithaca, New York 14853, and, upon information and belief, is a resident of the State of New York. She is sued in her individual capacity under the NYSHRL.

8.     Defendant Shea Kytomaa was at all relevant times Associate Director of Student Experience at AAP, with a business address at the College of Architecture, Art, and Planning, Cornell University, Ithaca, New York 14853, and, upon information and belief, is a resident of the State of New York. She is sued in her individual capacity under the NYSHRL.

9.     Defendant Samantha Pennell was at all relevant times a Senior Human Resources officer at AAP, with a business address at B-1 West Sibley Hall, Cornell University, Ithaca, New York 14853, and, upon information and belief, is a resident of the State of New York. She is sued in her individual capacity under the NYSHRL.

10.     Defendant Leslie Lok was at all relevant times a professor in the Department of Architecture and the instructor of record for ARCH 5911/8911, with a business address at 240D E. Sibley Hall, Cornell University, Ithaca, New York 14853, and, upon information and belief, is a resident of the State of New York. She is sued in her individual capacity under the NYSHRL.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 2000d, and 29 U.S.C. § 216(b).

12.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because those claims form part of the same case or controversy as Plaintiff's federal claims.

13.     This Court has original jurisdiction over this action on the independent ground of alienage diversity pursuant to 28 U.S.C. § 1332(a)(2). Plaintiff is a citizen of Canada; Defendants are citizens of the State of New York; and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.     This Court has personal jurisdiction over Defendants. Cornell is organized under New York law and operates its principal campus in this District. The Individual Defendants reside and work in this District. The conduct giving rise to this action occurred in this District.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), and pursuant to 42 U.S.C. § 2000e-5(f)(3), because all Defendants reside in this District, because a substantial part of the events and omissions giving rise to the claims occurred in Ithaca, Tompkins County, New York, and because the employment records relevant to the practices complained of are maintained and administered in this District.

## ADMINISTRATIVE EXHAUSTION AND TIMELINESS

16.     On or about April 2, 2026, Plaintiff, through counsel, submitted an inquiry to the United States Equal Employment Opportunity Commission (the "EEOC"). On April 3, 2026, Plaintiff executed a Charge of Discrimination under penalty of perjury, docketed as EEOC Charge No. 525-2026-01630, alleging discrimination on the basis of national origin and retaliation. The EEOC's Buffalo Local Office received the Charge on or about April 6, 2026.

17.     The Charge was filed within 300 days of the discrete adverse actions on which Plaintiff's Title VII claims are based, including the June 9, 2025 Notice of Required Withdrawal and Cornell's subsequent denial of Plaintiff's appeal in late June 2025. Earlier acts alleged herein are pleaded as background evidence and as component acts of a hostile environment, and are independently timely under the three-year limitations period governing Plaintiff's NYSHRL claims and the six-year period governing her NYLL claims.

18.     On April 23, 2026, the EEOC issued a Determination and Notice of Right to Sue. Plaintiff commences this action within ninety days of her receipt of that Notice.

**STATEMENT OF FACTS**

**A.  Cornell Admits Ms. Mistry and Promises Her Employment as a Component of Her Degree Program**

19.    By letter dated March 1, 2021, Cornell's Department of Architecture offered Ms. Mistry admission to its professional M.Arch. program. The offer letter stated that, "as an M.Arch. student you will be awarded a Graduate Teaching Research Specialist (GTRS) position in Terms 6 and 7 of the program," with a per-semester stipend and tuition award together worth approximately $10,000.

20.    Ms. Mistry accepted the offer, relocated from Toronto to Ithaca, and matriculated in the Fall 2021 semester. She and her family invested substantial sums in tuition and living expenses to fund her degree, including proceeds from the sale of family property.

21.    By email dated July 10, 2024, Cornell awarded Ms. Mistry a GTRS position for the Fall 2024 semester. The award required an average of 7.5 hours of work per week and provided $3,000 in tuition support and a stipend of $8,483, payable in semi-monthly paychecks. On September 5, 2024, the Department assigned Ms. Mistry to serve as teaching assistant for a course taught by Professor D. Medina Lasansky.

22.    By email dated October 28, 2024, sent on behalf of Department Chair Jose Castillo, Cornell awarded Ms. Mistry a GTRS position for the Spring 2025 semester on the same financial terms. On January 7, 2025, the Department assigned her to serve as teaching assistant for ARCH 1104, Elective Design Studio for Non-Majors.

23. Ms. Mistry performed her assigned duties in both semesters. Professor Lasansky, her Fall 2024 supervisor, later described Ms. Mistry in writing as "an exceptional individual" and "an invaluable asset on every front."

**B.  Fall 2024: An Enrollment Error Results in a Failing Grade**

24.    At the start of the Fall 2024 semester, an administrative hold delayed Ms. Mistry's course enrollment until approximately September 11, 2024. Ms. Mistry attended a Friday course in the good-faith belief that her Friday enrollment was ARCH 5614. In late October 2024, she learned that she was in fact enrolled in ARCH 5911, the Pre-thesis Methods Workshop taught by Defendant Lok.

25.    Ms. Mistry promptly consulted the course teaching assistant, Keiron de Nobriga, who advised her that her standing should not be an issue if she completed the outstanding coursework. In reliance on that advice, Ms. Mistry attended class beginning November 1, 2024, signed up for a presentation slot, and submitted the outstanding assignments.

26.    The ARCH 5911 syllabus stated that the final grade would be composed of five weighted components: articulation (10%), iterations and development (30%), thesis proposal poster (20%), syllabus (10%), and final dossier (30%). Ms. Mistry timely submitted the deliverables constituting the substantial majority of those components.

27.    On November 7, 2024, in the tenth week of a fourteen-week course, and only after Ms. Mistry had begun completing the coursework, Defendant Lok advised Ms. Mistry for the first time that her absences precluded a passing grade and recommended that she withdraw from the course. Defendant Lok had provided no warning in September or October.

28.    Upon information and belief, Defendant Lok did not comparably enforce the attendance policy against other students who were not of Ms. Mistry's actual or perceived national

origin. One such student attended approximately four class sessions and received a passing grade. Another M.Arch. student accumulated more than three absences, was offered an opportunity to reschedule a missed presentation, did not do so, and nevertheless passed.

29.     Ms. Mistry received a failing grade in ARCH 5911. In December 2024, Cornell also recorded a failing grade in ARCH 5511, Constructed Drawing I, the third such entry on her transcript for a course she never attended. Ms. Mistry submitted transfer-equivalency materials for ARCH 5511 in August 2021; Cornell issued her other equivalency results on and after August 20, 2021, after the semester had begun, and directed her on or about September 29, 2021 to resubmit the ARCH 5511 request, which she did, receiving neither an approval nor a denial. While her equivalency request remained unresolved, Cornell recorded failing grades in ARCH 5511 in Fall 2021 and again in Fall 2022. In January 2023, administrators reviewing her academic standing directed her to enroll in electives without raising ARCH 5511. In March 2023, she was told for the first time that she was required to petition for a late equivalency review; she submitted the petition, and on August 21, 2023, days before the semester and after she had committed to a leave of absence, Cornell denied it and advised that she would need to complete the course. When Ms. Mistry attempted to enroll in ARCH 5511 in Fall 2024, the enrollment system would not permit her to complete enrollment, which required administrative action by the Department; the Department did not complete her enrollment, and Cornell nevertheless recorded a third failing grade. Each of the three ARCH 5511 entries was recorded for a course Ms. Mistry did not attend and, as to Fall 2021 and Fall 2022, while her timely-submitted equivalency request remained pending without decision.

**C. January Through March 2025: Cornell Fails to Pay Ms. Mistry's Wages**

30.     On January 8, 2025, AAP Finance and HR Associate Breanna Barry advised Ms. Mistry that she could not be entered into Workday, Cornell's payroll system, until a Form I-9 was on file, and directed her to complete the form through Workday.

31.     On January 30, 2025, Ms. Mistry wrote to Ms. Barry, copying Defendant Pennell and two other administrators, advising that the Workday I-9 task was not available to her, attaching her completed I-9, and requesting review. She received no response.

32.     Ms. Mistry began performing her Spring 2025 GTRS duties on or about January 22, 2025. She received no compensation.

33.     On February 6, 2025, Ms. Mistry contacted Accounts Payable, which directed her to Payroll. On February 15, 2025, she contacted Payroll and received no response. On February 18, 2025, she sent a further written demand to Ms. Barry, again copying Defendant Pennell and others, stating that she had not been paid for the semester and attaching a record of her hours worked. She again received no response.

34.     On February 19, 2025, Ms. Mistry located Ms. Barry in person and asked her to check the payroll system. Only then was Ms. Mistry's Workday account activated. Her I-9 was verified in person on February 24, 2025.

35.     On February 28, 2025, Cornell paid Ms. Mistry a single deposit of $862.29 for more than five weeks of work. That amount did not cover Ms. Mistry's rent.

36.     Ms. Mistry's Fall 2024 paychecks for the August through October 2024 pay periods had been mailed to an incorrect address in New York City and were never received by her. After Ms. Mistry raised the issue, Cornell reissued checks totaling $4,566.87. Those checks were not made available to her until March 6, 2025, approximately five months after the wages were earned.

37.     Cornell paid the balance of Ms. Mistry's outstanding Spring wages only after she escalated the matter in writing. On March 2, 2025, Ms. Mistry wrote to the Dean of AAP, copying Cornell's Office of General Counsel and the Office of the Ombudsman, asserting that the withholding of her wages violated federal and state labor law and demanding corrective action. Defendant Kudva initially responded that payment would issue "in the following payroll cycle." After Ms. Mistry objected in writing that further delay was unlawful, Cornell issued an on-demand check on or about March 5, 2025.

**D.  January and February 2025: Enrollment Obstruction and the Closure of Ms. Mistry's F-1 Record**

38.     In late Fall 2024, Cornell batch-enrolled Ms. Mistry in ARCH 8912, the Thesis course. On January 16, 2025, the Department assigned her thesis advisors. The Department scheduled weekly advisor meetings and, on January 21, 2025, assigned Ms. Mistry a studio desk. Ms. Mistry participated in the Thesis course, including regular advisor meetings, for more than a month.

39.     On or about January 10, 2025, Cornell administratively dropped Ms. Mistry from the Thesis course on the ground that she had failed the prerequisite, ARCH 5911. Ms. Mistry maintains that she did not learn of the drop until January 31, 2025, when her student portal displayed the Thesis course as dropped. During the same period, the Department continued to treat her as a Thesis student in its communications and logistics.

40.     The drop placed Ms. Mistry below the twelve-credit threshold required to maintain her F-1 student visa status. Between January 30 and February 14, 2025, Ms. Mistry repeatedly advised administrators, including Defendant Kytomaa, Registrar staff, Program Director Timur Dogan, Department Chair Castillo, and the offices of two deans, that she was unable to enroll through the student portal, that departmental permission was required, and that her visa status would be

jeopardized by February 11, 2025. Her attempts to enroll in electives were blocked. Professors she petitioned declined her requests because the semester was too far advanced. Several of her written escalations went unanswered.

41.     On February 4, 2025, during a Zoom meeting, Defendant Kytomaa told Ms. Mistry that there was "no point" in filing a grievance with the Graduate School because it would return to the same department administrators; that "a grade from a past semester cannot be changed," a statement contradicted in writing the same day by Program Director Dogan; and that Ms. Mistry "was not enrolled in thesis." By these statements, Defendant Kytomaa discouraged Ms. Mistry from pursuing the grievance procedures provided by Cornell's own policies.

42.     On February 14, 2025, at 2:58 p.m., Cornell's Office of Global Learning notified Ms. Mistry by email: "As required by immigration regulations, we closed your F-1 immigration record today . . . . If you are in the U.S., then you should leave as soon as possible to avoid accruing unlawful presence time." University staff nevertheless advised Ms. Mistry, in substance, to remain in the United States over the February break.

43.     Department staff were aware that Ms. Mistry's mother had recently suffered a serious injury and that Ms. Mistry had intended to travel home during the break. As a consequence of the closure, Ms. Mistry could not leave the country without forfeiting her ability to return and complete the semester. Her F-1 record was not restored until March 3, 2025, following weeks of her own sustained efforts.

44.     On March 11, 2025, Senior Director of Student Experience Jennifer Michael wrote to Ms. Mistry that her "record was never closed." That statement is contradicted by the Office of Global Learning's February 14, 2025 closure notice.

**E.  February 24, 2025: Defendant Kudva's National Origin Remarks**

45.     On February 24, 2025, Ms. Mistry met with Defendant Kudva and Ms. Michael to discuss her enrollment, wage, and visa concerns. When Ms. Mistry explained that the closure of her record had prevented her from traveling home to see her injured mother, Defendant Kudva responded: "February Break isn't long enough to travel to India."

46.     Ms. Mistry is from Toronto. She had made no statement suggesting any connection to India. When Ms. Mistry corrected her, Defendant Kudva laughed and stated, in words or substance: "India, Canada, I don't discriminate."

47.     In the same meeting, Ms. Mistry stated that she believed the Department was "blacklisting" her because multiple administrators were ignoring her emails and concerns. Defendant Kudva laughed at that concern as well. Ms. Michael stated that Ms. Mistry would receive a "big check" that Friday for her unpaid wages. The deposit that followed, on February 28, 2025, was $862.29.

**F.  March 2025: Protected Complaints and Cornell's Response**

48.     As set forth above, on March 2, 2025, Ms. Mistry complained in writing to the Dean of AAP, with copies to the Office of General Counsel, that Cornell's withholding of her wages violated federal and state labor law.

49.     On March 5, 2025, Defendant Kudva circulated a written "report" that characterized the payroll issues as "resolved," stated that Ms. Mistry's failing grade "will stand," and disputed the closure of her immigration record. On March 7 and March 11, 2025, Ms. Mistry responded in writing, citing NYLL §§ 191 and 198 and the FLSA, disputing the report's account, and advising that she had filed a complaint with the Department of Labor. Defendant Kudva replied that her understanding was "substantially different" and directed Ms. Mistry back to the department personnel whose conduct was at issue.

50. On March 13, 2025, Program Director Dogan advised Ms. Mistry, in substance, to focus on her academics and to set aside what he termed the "other stuff," meaning her wage, visa, and discrimination complaints, which he described as a distraction.

51. On March 27, 2025, Ms. Mistry attended a meeting with Defendant Pennell and Defendant Kytomaa. Defendant Pennell stated that "HR doesn't usually take meetings with students"; characterized Ms. Mistry as difficult and her emails as creating "a web for them to untangle"; denied that Cornell had withheld pay; and told Ms. Mistry, for the first time and contrary to the Department's own written GTRS award and course assignment, that she "was not supposed to work this semester." Defendants Pennell and Kytomaa concluded the meeting by telling Ms. Mistry, in words or substance, "you have to drop it now."

52. On March 28, 2025, Ms. Mistry filed a bias report with Cornell's Office of Institutional Equity and Title IX ("OIETIX"), designated Incident Report No. 105020, concerning Defendant Kudva's February 24, 2025 statements. On April 4, 2025, the assigned investigator advised Ms. Mistry that the matter was "not an extreme circumstance" and offered to arrange a meeting at which Defendant Kudva could apologize. Cornell took no other corrective action.

**G. April Through June 2025: The Required Withdrawal**

53. During April and May 2025, Ms. Mistry pursued each avenue Cornell identified: petitions to deviate from the curriculum sequence, petitions for equivalency credit (including ARCH 6508 in place of ARCH 5511, as administrators had advised), incompletes for her Spring 2025 courses, and requests for financial relief. During the same period, Cornell's Bursar advised that Ms. Mistry would be withdrawn if her past-due balance was not paid by June 7, 2025. That balance was attributable in part to the University's withholding of her wages.

54. On May 14, 2025, Ms. Mistry's treating physician documented her ongoing anxiety, panic attacks, and an acute depressive episode. The physician's note was provided to Cornell's care team on May 15, 2025.

55. On May 19 and 20, 2025, Assistant Dean Richy Boche confirmed that Ms. Mistry was eligible for incompletes if arranged with her professors. On May 20, 2025, Professor Margaret Kirk, the instructor of ARCH 5614, wrote to Ms. Mistry that any F she entered would be "a placeholder for what we decide," that she could "change it after it is posted," and that she would "draw up an agreement so there is no confusion" if an incomplete were approved.

56. On May 23, 2025, the Dean of AAP denied Ms. Mistry's request for a retroactive tuition waiver. On June 3, 2025, Ms. Mistry paid Cornell $17,000 toward her balance to avoid the threatened financial withdrawal.

57. The Academic Review Committee met on June 5, 2025, two days after Cornell accepted Ms. Mistry's $17,000 payment, and on June 9, 2025, Cornell issued Ms. Mistry a Notice of Required Withdrawal from the M.Arch. program, signed by Senior Director Michael as Recorder for the Committee and copied to Program Director Dogan, her advisor, and the Registrar. The notice stated that the decision was unanimous, that she was "permanently prohibited" from continuing studies in the college, and that it rested on her academic record, including a stated Spring 2025 semester GPA of 1.750, notwithstanding that her transcript printed the same day reflected no posted Spring 2025 grades and that the University's own incomplete process remained open, including the "placeholder" grade Professor Kirk had committed in writing to revisit. The academic-warning history recited in the notice was itself built in material part on the disputed ARCH 5511 entries: the Fall 2021 warning and the Fall 2022 Final Warning each rested on failing grades that included ARCH 5511, recorded while Ms. Mistry's equivalency request was pending and undecided.

58.     The required withdrawal terminated Ms. Mistry's enrollment, her eligibility for the GTRS employment promised through Term 7 of the program, her progress toward professional licensure, and her F-1 status. At the time, Ms. Mistry had completed all six required design studios and substantially all of the M.Arch. curriculum other than the Thesis sequence.

59.     On June 15, 2025, Ms. Mistry timely appealed. Her submission included a completion plan, documentation of the administrative failures described above, and Professor Lasansky's letter of support. By letter dated June 24, 2025, signed by Senior Director Michael, Cornell denied the appeal, stating that the committee had voted to uphold the withdrawal and that the decision was final.

**H.  Subsequent Events and Harm**

60.     Beginning in September 2025, Cornell's billing servicers sent Ms. Mistry escalating collection demands, including a September 24, 2025 letter asserting that an account was "150 days past due" in the amount of $6,288.55, and a November 10, 2025 statement demanding $3,034.15 with interest accruing at 15%. Ms. Mistry remains without her degree, without the employment Cornell promised, and without a path to architectural licensure.

61.     As a direct and proximate result of Defendants' conduct, Ms. Mistry has suffered lost wages and employment benefits; the loss of the value of years of tuition and related investment in a degree Cornell prevented her from completing; diminished earning capacity in her profession; out-of-pocket losses; harm to her credit and reputation; and emotional distress with physical manifestations, for which she has required medical care.

**FIRST CAUSE OF ACTION**

**Discrimination on the Basis of National Origin in Violation of Title VII (Against Cornell)**

62. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

63. At all relevant times, Plaintiff was Cornell's employee and a member of a protected class by reason of her national origin, Canadian, and her perceived national origin, Indian.

64. Cornell, through its agents, subjected Plaintiff to adverse employment actions and to disparate terms and conditions of employment because of her actual and perceived national origin, including the withholding and delayed payment of wages, the denial of administrative support afforded to other employees, hostility directed at her perceived national origin by a senior dean, and the June 9, 2025 required withdrawal, which terminated her employment eligibility.

65. The conduct alleged was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and created a hostile work environment based on national origin.

66. As a direct and proximate result, Plaintiff has suffered and continues to suffer economic loss, emotional distress, and other damages. Cornell acted with malice or with reckless indifference to Plaintiff's federally protected rights, and punitive damages are warranted.

**SECOND CAUSE OF ACTION**

**Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a) (Against Cornell)**

67. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

68. Plaintiff engaged in protected activity, including her complaints of discriminatory and unequal treatment in February and March 2025, her March 28, 2025 bias report to OIETIX concerning Defendant Kudva's remarks, and her participation in the OIETIX process in April 2025.

69. Cornell had knowledge of Plaintiff's protected activity and thereafter subjected her to materially adverse actions, including the denial of her employment status and the instruction to "drop it" at the March 27, 2025 meeting, the refusal to correct her academic record, the foreclosure of the

incomplete and equivalency processes, the June 9, 2025 required withdrawal, and the denial of her appeal.

70.     A causal connection exists between the protected activity and the adverse actions, as demonstrated by temporal proximity, by the escalating hostility that followed each complaint, and by the pretextual character of Cornell's stated reasons, including its issuance of the withdrawal while its instructors' written grade-revision commitments remained outstanding and six days after it accepted Plaintiff's $17,000 payment.

71.     As a direct and proximate result, Plaintiff has been damaged. Cornell's conduct was willful, and punitive damages are warranted.

### THIRD CAUSE OF ACTION

**Discrimination and Retaliation in Violation of Title VI, 42 U.S.C. § 2000d (Against Cornell)**

72.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

73.     Cornell is a recipient of federal financial assistance. As a student enrolled in Cornell's M.Arch. program, Plaintiff was an intended beneficiary of Cornell's federally funded education programs and activities.

74.     Cornell, through officials with authority to address discrimination and to institute corrective measures, subjected Plaintiff to intentional discrimination on the basis of her actual and perceived national origin, and was deliberately indifferent to discrimination of which it had actual knowledge, including through OIETIX's characterization of her report as "not an extreme circumstance" and its failure to take corrective action. The discrimination alleged includes the unequal enforcement of attendance and grading policies against Plaintiff as compared with similarly situated students outside her protected class, as alleged above.

75. Cornell also retaliated against Plaintiff for her complaints of national origin discrimination, including by requiring her withdrawal and denying her appeal.

76. As a direct and proximate result, Plaintiff lost the benefits of Cornell's education programs, including her degree candidacy, and suffered economic loss and emotional distress.

**FOURTH CAUSE OF ACTION**

**Discrimination in Employment in Violation of NYSHRL § 296(1)(a) (Against Cornell)**

77. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

78. Cornell discriminated against Plaintiff in the terms, conditions, and privileges of her employment because of her actual and perceived national origin, and subjected her to treatment beyond petty slights and trivial inconveniences, in violation of N.Y. Exec. Law § 296(1)(a).

79. As a direct and proximate result, Plaintiff has been damaged in an amount to be determined at trial, including back pay and compensatory damages for emotional distress. The willfulness of the conduct warrants punitive damages.

**FIFTH CAUSE OF ACTION**

**Discrimination in Education in Violation of NYSHRL § 296(4) (Against Cornell)**

80. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

81. Cornell is an education corporation within the meaning of N.Y. Exec. Law § 296(4). Cornell denied Plaintiff the use of its facilities and the benefits of its educational programs, and permitted her harassment, because of her actual and perceived national origin, including by obstructing her enrollment, refusing to correct her academic record, and requiring her withdrawal.

82. As a direct and proximate result, Plaintiff has been damaged in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

**Retaliation in Violation of NYSHRL § 296(7) (Against All Defendants)**

83. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

84. Plaintiff engaged in activity protected by the NYSHRL, including her internal complaints opposing discrimination and her March 28, 2025 bias report.

85. Defendants retaliated against Plaintiff because of that protected activity through the adverse actions alleged above, culminating in the June 9, 2025 required withdrawal and the denial of her appeal.

86. As a direct and proximate result, Plaintiff has been damaged in an amount to be determined at trial.

### SEVENTH CAUSE OF ACTION

**Aiding and Abetting in Violation of NYSHRL § 296(6) (Against the Individual Defendants)**

87. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

88. Each Individual Defendant participated in, aided, abetted, incited, compelled, or coerced the discriminatory and retaliatory conduct alleged herein: Defendant Kudva, by her February 24, 2025 remarks, her dismissal of Plaintiff's complaints, and her participation in the adverse decisions; Defendant Kytomaa, by deterring Plaintiff from the grievance process, providing false information, and participating in the March 27, 2025 meeting; Defendant Pennell, by denying

Plaintiff's employment and wages and instructing her to "drop it now"; and Defendant Lok, by the unequal enforcement of course policies against Plaintiff.

89.     As a direct and proximate result, Plaintiff has been damaged in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

**Failure to Timely Pay Wages in Violation of NYLL Article 6, §§ 191 and 198 (Against Cornell)**

90.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

91.     At all relevant times, Plaintiff was an "employee" and Cornell an "employer" within the meaning of NYLL Article 6, and the compensation owed to Plaintiff for her GTRS work constituted "wages" within the meaning of NYLL § 190.

92.     Cornell failed to pay Plaintiff's wages within the time required by NYLL § 191. Cornell paid no wages for work Plaintiff performed from on or about January 22, 2025 until the partial payment of $862.29 on February 28, 2025; did not pay the balance of her earned Spring wages until on-demand payments in early March 2025; and did not make her Fall 2024 wages of approximately $4,566.87 available until March 6, 2025, approximately five months after those wages were earned.

93.     Plaintiff is entitled to recover the full amount of the underpaid and untimely paid wages, liquidated damages equal to one hundred percent of those amounts, prejudgment interest, and attorneys' fees and costs pursuant to NYLL § 198(1-a). Cornell's violations were willful. Plaintiff provided repeated written notice; Cornell's agents ignored that notice for weeks and thereafter denied that any wages had been withheld.

## NINTH CAUSE OF ACTION

**Violation of the FLSA, 29 U.S.C. §§ 206, 215(a)(3), and 216(b) (Against Cornell)**

94.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

95.     Cornell is an enterprise engaged in commerce within the meaning of the FLSA, and Plaintiff was its employee. Plaintiff's GTRS work was employment, not educational training: she taught and supported courses outside her own program of study, including an elective design studio for non-majors; her labor conferred an immediate operational benefit on Cornell and displaced work that paid staff or instructors would otherwise have performed; she trained other student workers; Cornell set her hours, assignments, and compensation and paid her through its payroll system as an employee; and her teaching duties were compensated by wages separate from any academic credit. By failing to pay Plaintiff any wages on her regular paydays for extended periods of work, including the pay periods from January 22, 2025 through late February 2025, Cornell failed to pay wages, including the minimum wage, when due, in violation of the FLSA's prompt payment requirement. Plaintiff documented her hours contemporaneously, including hours worked beyond her scheduled assignment in training other students, and transmitted that record to Cornell with her February 18, 2025 written demand.

96.     Plaintiff complained to Cornell, orally and in writing, that its failure to pay her wages was unlawful, including in her March 2, 2025 written complaint invoking federal labor law. Cornell thereafter took adverse action against her, including the March 27, 2025 denial of her employment status, the required withdrawal, and the termination of her employment eligibility, in violation of 29 U.S.C. § 215(a)(3).

97.     Cornell's violations were willful. Plaintiff is entitled to her unpaid wages, an equal amount as liquidated damages, legal and equitable relief for the retaliation, and attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## TENTH CAUSE OF ACTION

### Breach of Contract (Against Cornell)

98.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

99.     Cornell's March 1, 2021 offer of admission, its GTRS award communications of July 10, 2024 and October 28, 2024, its published policies, and the parties' course of dealing formed contracts between Plaintiff and Cornell. Under those contracts, Plaintiff was entitled, among other things, to the promised GTRS positions and compensation, to grading in accordance with published course criteria, to access to the University's grievance and petition procedures, and to the University's adherence to its own academic policies. In the alternative, the same sources gave rise to an implied contract between Plaintiff and Cornell upon her acceptance of the offer of admission, carrying with it New York's implied covenant of good faith and fair dealing.

100.     Plaintiff performed her obligations, including by performing her assigned teaching work and paying tuition, including the $17,000 payment on June 3, 2025.

101.     Cornell materially breached its obligations by failing to timely pay the promised GTRS compensation; by departing from the published grading criteria and applying attendance policies unequally; by recording failing grades for coursework in which Plaintiff maintains she was not properly enrolled and refusing to correct them; by obstructing the enrollment, equivalency, and incomplete procedures its own administrators prescribed; and by requiring Plaintiff's withdrawal while those procedures remained open, six days after accepting her $17,000 payment.

102.     As a direct and proximate result, Plaintiff has suffered damages, including the value of unpaid and delayed compensation, tuition and fees paid without receipt of the promised educational benefits, and consequential losses, in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

**Unjust Enrichment, Quantum Meruit, and Money Had and Received, Pleaded in the Alternative (Against Cornell)**

103.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

104.    In the alternative, Cornell was enriched at Plaintiff's expense. Cornell received the benefit of Plaintiff's teaching labor without timely payment, and it accepted her $17,000 tuition payment on June 3, 2025 and extinguished her enrollment six days later, retaining the payment while denying her the semester and the degree progress for which the payment was made. Plaintiff rendered her teaching services in good faith with the expectation of compensation, and Cornell accepted those services; the reasonable value of those services was not less than the $11,483 per semester ($3,000 tuition support plus $8,483 stipend) the parties themselves fixed. The $17,000 payment, made under the pressure of a threatened withdrawal arising from a balance Cornell's own wage withholding helped create, is money had and received that in equity and good conscience belongs to Plaintiff.

105.    Equity and good conscience require restitution of the amounts by which Cornell was unjustly enriched.

## TWELFTH CAUSE OF ACTION

**Discrimination and Retaliation in Violation of 42 U.S.C. § 1981 (Against Cornell and Defendant Kudva)**

106.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

107.    Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, guarantees to all persons within the United States the same right to make and enforce contracts as is enjoyed by white citizens, and prohibits discrimination on the basis of race, ethnicity, and ancestry, including discrimination based on a person's perceived ethnicity or ancestry, in the making, performance,

modification, and termination of contracts, and in the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

108.    Plaintiff's employment relationship and her enrollment agreement with Cornell were contractual relationships within the meaning of Section 1981. Defendants Cornell and Kudva, acting intentionally and because of Plaintiff's perceived South Asian ethnicity and ancestry, impaired the making, performance, and enjoyment of those contractual relationships, including through the conduct alleged above, the hostility directed at Plaintiff's perceived ancestry, the withholding of the benefits of her employment, and the termination of her enrollment and employment eligibility by means of the June 9, 2025 required withdrawal. Defendant Kudva was personally involved in that conduct, including through her February 24, 2025 remarks and her participation in the adverse decisions.

109.    Defendants further retaliated against Plaintiff for her complaints opposing discrimination prohibited by Section 1981, including her March 28, 2025 bias report, in violation of 42 U.S.C. § 1981.

110.    Plaintiff's perceived-ancestry discrimination was a but-for cause of the impairment of her contractual rights. As a direct and proximate result, Plaintiff has been damaged in an amount to be determined at trial, and the intentional and reckless character of the conduct warrants punitive damages.

### THIRTEENTH CAUSE OF ACTION

### Retaliation in Violation of NYLL § 215 (Against Cornell)

111.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

112.    Plaintiff made complaints to Cornell that it had violated provisions of the New York Labor Law, including her February 6, 15, and 18, 2025 payment demands, her March 2, 2025 written complaint to the Dean of AAP, copied to the Office of General Counsel, expressly invoking state labor law, and her March 7 and 11, 2025 written complaints citing NYLL §§ 191 and 198 and referencing her complaint to the Department of Labor. These were protected activities within the meaning of NYLL § 215(1)(a).

113.    Because of those complaints, Cornell, through its agents, took adverse actions against Plaintiff, including the March 27, 2025 meeting at which its personnel denied her employment status and instructed her to "drop it now," the refusal to correct her academic record, the June 9, 2025 required withdrawal terminating her enrollment and employment eligibility, and the denial of her appeal.

114.    Cornell's conduct violated NYLL § 215. Pursuant to NYLL § 215(2), Plaintiff is entitled to all appropriate relief, including lost compensation, liquidated damages of up to $20,000, prejudgment interest, and reasonable attorneys' fees and costs. This claim is timely under the two-year limitations period, measured from the June 2025 adverse actions.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, and award the following relief:

(a) back pay, front pay, and lost employment benefits in amounts to be determined at trial;

(b) compensatory damages for economic loss, loss of educational opportunity and investment, harm to career and earning capacity, emotional distress, humiliation, and loss of enjoyment of life;

(c) liquidated damages pursuant to NYLL §§ 198(1-a) and 215(2) and 29 U.S.C. § 216(b);

(d) punitive damages pursuant to 42 U.S.C. § 1981a and the NYSHRL;

(e) equitable relief, including reinstatement to the M.Arch. program with a corrected academic record, or front pay and degree-equivalent relief in lieu thereof;

(f) prejudgment and post-judgment interest;

(g) attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, NYLL § 198, 29 U.S.C. § 216(b), and N.Y. Exec. Law § 297(10); and

(h) such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.


Dated: July 22, 2026

Respectfully submitted,

**LLG NATIONAL LAW GROUP**

By: /s/ Nawal Ramay

Nawal Ramay Esq.

Bar Roll No. [707631]

525 Route 73 North – Suite 104
Marlton, NJ 08053
(T) (856) 652-2000
(F) (856) 375-1010
nawal.ramay@llgnational.com
*Attorneys for Plaintiffs*