UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SHEVAUN KASI MISTRY,
Plaintiff,

v.

CORNELL UNIVERSITY, NEEMA KUDVA, SHEA KYTOMMA, SAMANTHA PENNELL, and LESLIE LOK,

Defendants.

Case No. 3:26-cv-1419 (ECC/ML)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

BOND, SCHOENECK & KING, PLLC
Suzanne M. Messer, Esq.
Jacqueline E. Zahn, Esq.
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8628

*Attorneys for Defendants*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 2

- A. Plaintiff's Enrollment and Academic Progress in the M.Arch. Program ..... 2
- B. Plaintiff's Immigration Status and Enrollment-Related Issues ..... 3
- C. Plaintiff's Graduate Assistant Appointments and Related Payroll Complaints ..... 3
- D. Plaintiff's February 24, 2025, Meeting with Defendant Kudva ..... 4
- E. Plaintiff Fails to Pay her Spring 2025 Tuition ..... 5
- F. Plaintiff is Withdrawn from the M.Arch. Program ..... 5
- G. Plaintiff's Complaint ..... 5

ARGUMENT ..... 5

POINT I: ANY CHALLENGE TO PLAINTIFF'S WITHDRAWAL IS UNTIMELY ..... 6

POINT II: PLAINTIFF FAILS TO PLAUSIBLY ALLEGE TITLE VII DISCRIMINATION OR RETALIATION ..... 8

- A. Plaintiff's Title VII Discrimination Claim Must Be Dismissed ..... 8
  - 1. The Majority of the Alleged Discriminatory Acts Are Time-Barred ..... 9
  - 2. Plaintiff's Academic Withdrawal Is Not an Adverse Employment Action ..... 9
  - 3. The Complaint Fails to Plausibly Allege National Origin Discrimination ..... 10
- B. Plaintiff's Title VII Hostile Work Environment Claim Fails as a Matter of Law ..... 13
- C. Plaintiff's Title VII Retaliation Claim Must Be Dismissed ..... 14

POINT III: PLAINTIFF'S TITLE VI DISCRIMINATION CLAIMS MUST BE DISMISSED ..... 16

- A. The Complaint Lacks Non-Conclusory Allegation of Intentional Discrimination ..... 16
- B. Plaintiff's Disparate Treatment Theory Fails ..... 17
- C. Plaintiff's Deliberate Indifference Theory Fails ..... 17

POINT IV: PLAINTIFF'S SECTION 1981 DISCRIMINATION CLAIM FAILS ..... 18

POINT V: PLAINTIFF'S NYSHRL CLAIMS MUST BE DISMISSED ..... 19

- A. Plaintiff Fails to Satisfy Even the NYSHRL's More Lenient Standard ..... 19
- B. Plaintiff's Sixth Cause of Action Alleging Retaliation under the NYSHRL Fails ..... 20
- C. Plaintiff's NYSHRL § 296(6) Aiding and Abetting Claim Fails Because There Is No Predicate Violation ..... 21

POINT VI: PLAINTIFF'S WAGE-RELATED CLAIMS ARE INSUFFICIENTLY PLED 21

- A. Plaintiff's NYLL Untimely Payment Claims Should Be Dismissed ..... 21
- B. Plaintiff's FLSA Untimely Payments Claims Must Be Dismissed ..... 22

C. Plaintiff's NYLL and FLSA Retaliation Claims Must Be Dismissed ...................... 22
POINT VII: PLAINTIFF'S CONTRACT AND QUASI-CONTRACT CLAIMS MUST BE DISMISSED ........................................................................................................ 23
**CONCLUSION** ........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alameda v. Ass'n of Soc. Work Bds.*,
2024 U.S. Dist. LEXIS 175886 (S.D.N.Y. Sept. 25, 2024)....................18

*Alrqiq v New York Univ.*,
127 A.D.3d 674 (1st Dept. 2015)....................7, 8

*Alston v. Mhany Mgmt.*,
2026 U.S. Dist. LEXIS 208441 (S.D.N.Y. Sept. 15, 2026)....................19

*Ansari v. New York Univ.*,
1997 U.S. Dist. LEXIS 6863 (S.D.N.Y. May 16, 1997)....................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 6, 10

*Badr v. N.Y.I.T.*,
2025 U.S. Dist. LEXIS 256055 (E.D.N.Y. Dec. 10, 2025)....................14, 15, 16

*Banks v. GM, LLC*,
81 F.4th 242 (2d Cir. 2023)....................13

*Beardsley v. Cnty. of Saratoga*,
2026 U.S. Dist. LEXIS 20756 (N.D.N.Y. Mar. 30, 2026)....................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Brooks v. Bright Horizons Fam. Sols., Inc.*,
2026 U.S. App. LEXIS 16561 (2d Cir. June 9, 2026)....................14

*Brown v. Montefiore Med. Ctr.*,
2021 U.S. Dist. LEXIS 57179 (S.D.N.Y. Mar. 25, 2021)....................19

*Brown v. Montefiore Med. Ctr.*,
2023 U.S. Dist. LEXIS 128952 (S.D.N.Y. July 25, 2023)....................12

*Bucklen v. Rensselaer Polytechnic Inst.*,
166 F. Supp. 2d 721 (N.D.N.Y. 2001)....................9, 10

*Burgess v. New Sch. Univ.*,
2024 U.S. Dist. LEXIS 163306 (S.D.N.Y. Sept. 11, 2024)....................20

*Castagna-Esposito v. Chestnut*,
2026 U.S. App. LEXIS 10225 (2d Cir. Apr. 9, 2026)....................2

*Chai v. N.Y. Univ.*,
2024 U.S. Dist. LEXIS 160094 (S.D.N.Y. Sept. 4, 2024) ....................6, 7

*Cherry v. New York City Hous. Auth.*,
564 F. Supp. 3d 140 (E.D.N.Y. 2021) ....................11

*Croce v. St. Joseph's Coll.*,
73 Misc. 3d (Sup. Ct. Suffolk Cnty. 2021) ....................24

*Croce v. St. Joseph's Coll.*,
219 A.D.3d 693 (4th Dept. 2023) ....................23, 24

*Cruz v. Coach Stores, Inc.*,
202 F.3d 560 (2d Cir. 2000)....................13

*Demas v. Levitsky*,
291 A.D.2d 653 (3d Dept. 2002) ....................7

*Desardouin v. City of Rochester*,
708 F.3d 102 (2d Cir. 2013)....................13

*Dodd v. City Univ. of N.Y.*,
489 F. Supp. 3d 219 (S.D.N.Y. 2020)....................14

*Doe v. Columbia Univ.*,
2020 U.S. Dist. LEXIS 56233 (S.D.N.Y. Mar. 31, 2020) ....................7

*Doe v. Syracuse Univ.*,
440 F.Supp.3d 158 (N.D.N.Y. 2020)....................24

*Doe v. Trs. of Colum. Univ.*,
2022 U.S. Dist. LEXIS 153239 (S.D.N.Y. Aug. 25, 2022)....................18

*Fletcher v. ABM Building Value*,
775 F. App'x 9 (2d Cir. 2019) ....................11

*Gaughan v. Rubenstein*,
261 F. Supp. 3d 390 (S.D.N.Y. May 23, 2017) ....................23

*Grogan v. Saint Bonaventure University*,
91 A.D.2d 855 (4th Dept. 1982) ....................6

*Hamilton v. Siemens Healthcare Diagnostics, Inc.*,
2026 U.S. Dist. LEXIS 73983 (S.D.N.Y. Mar. 31, 2026) ....................21

*King v. Aramark Servs.*,
96 F.4th 546 (2d Cir. 2024) ....................9

*Knox v. CRC Mgmt. Co., LLC*,
134 F.4th 39 (2d Cir. 2025) ....................................................................................13

*Laporte v. Sullivan*,
801 F. Supp. 3d 98 (N.D.N.Y. 2025)....................................................................10

*Lorelli v. Woodlands Apt. Corp.*,
2026 U.S. Dist. LEXIS 109414 (E.D.N.Y. Mar. 31, 2026) ....................................21

*Marshall ex rel. All Others v. UBS Fin. Servs.*,
2015 U.S. Dist. LEXIS 88048 (S.D.N.Y. July 6, 2015) ........................................21

*Matthew v. JPMorgan Chase Bank, N.A.*,
2026 U.S. App. LEXIS 19005 (2d Cir. June 30, 2026) ..........................................13

*McNeill v. Off. of Child. & Fam. Servs.*,
2026 U.S. Dist. LEXIS 61558 (N.D.N.Y. Mar. 24, 2026)......................................10

*Meisner v. Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs.*,
175 A.D.3d 1653 (3d Dept. 2019) ............................................................................6

*Minto v. Molloy Coll.*,
2021 U.S. Dist. LEXIS 12516 (E.D.N.Y. Jan. 21, 2021) ......................................17

*Murray v. New York Univ. College of Dentistry*,
57 F.3d 243 (2d Cir. 1995)...............................................................................14, 15

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)....................................................................................................9

*Pachter v. Bernard Hodes Group, Inc.*,
505 F.3d 129 (2d Cir. 2007)......................................................................................21

*Paribello v. Osaic, Inc.*,
2026 N.Y. Misc. LEXIS 3843 (Sup. Ct. N.Y. Cnty. Apr. 14, 2026) .....................22

*Perry v. Ethan Allen, Inc.*,
115 F.3d 143 (2d Cir. 1997)......................................................................................13

*Perry v. Weill Cornell Med. Coll.*,
2026 U.S. Dist. LEXIS 177497 (S.D.N.Y. Aug. 10, 2026) ....................................14

*Rajaravivarma v. Bd. of Trs. for the Conn. State Univ. Sys.*,
862 F. Supp. 2d 127 (D. Conn. 2012)......................................................................11

*Rogers v. City of Troy*,
148 F.3d 52 (2d Cir. 1998)........................................................................................22

*Rynasko v. N.Y. Univ.*,
63 F.4th 186 (2d Cir. 2023) ....................24

*Salem v. N.Y. Univ.*,
2023 U.S. Dist. LEXIS 166010 (S.D.N.Y. Sept. 15, 2023) ....................12, 15

*Schwetz v. Bd. of Coop. Educ. Servs. of Nassau Cnty.*,
2026 U.S. App. LEXIS 5057 (2d Cir. Feb. 20, 2026) ....................9

*Smith v. N.Y. & Presbyterian Hosp.*,
440 F. Supp. 3d 303 (S.D.N.Y. 2020) ....................23

*Snyder v. Bronfman*,
13 N.Y.3d 504 (2009) ....................24

*Stanley v. City Univ. of N.Y.*,
2023 U.S. Dist. LEXIS 55745 (S.D.N.Y. Mar. 30, 2023) ....................15

*Tolbert v. Queens College*,
242 F.3d 58 (2d Cir. 2001) ....................16

*Tomassi* v. Insignia Fin. Group, Inc.,
478 F.3d 111 (2007) ....................11

*Vengalattore v. Cornell Univ.*,
36 F.4th 87 (2d Cir. 2022) ....................16

*Village of Freeport v. Barrella*,
814 F.3d 594 (2d Cir. 2016) ....................18

*Weiss v. City Univ. of N.Y.*,
2019 U.S. Dist. LEXIS 43869 (S.D.N.Y. Mar. 18, 2019) ....................10

*White v. New Sch.*,
2026 U.S. Dist. LEXIS 155983 (S.D.N.Y. July 14, 2026) ....................17

*Wiley v. Plattsburgh*,
407 F. Supp. 3d 119 (N.D.N.Y. 2019) ....................13

*Williams v. City Univ. of New York*,
2014 U.S. Dist. LEXIS 118782 (E.D.N.Y. Feb. 7, 2014) ....................11, 15

*Yalincak v. N.Y. Univ.*,
2009 U.S. Dist. LEXIS 143913 (D. Conn. Sept. 2, 2009) ....................24, 25

*Zonshayn v. Sackler Sch. of Med.*,
648 F. Supp. 3d 485 (S.D.N.Y. 2023) ....................7

**Statutes**

29 U.S.C. § 206 .......... 22

29 U.S.C. § 215(a)(3) .......... 23

42 U.S.C. § 1981 .......... 1, 5, 14, 18, 19

42 U.S.C. § 2000d .......... 16

42 U.S.C. § 2000e-2(a) .......... 9, 10

42 U.S.C. § 2000e-5(e)(1) .......... 9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .......... 2, 6

N.Y. CPLR § 217 .......... 8

## PRELIMINARY STATEMENT

Plaintiff Shevaun K. Mistry is a former graduate student in Cornell University's Master of Architecture program who was required to withdraw after years of poor academic performance. The Complaint itself alleges failing grades, academic warnings in Fall 2021 and Fall 2022, a 1.750 GPA, and an inexplicable course of events that led to Plaintiff attending more than one course in which she was not enrolled while failing to attend a course in which she was enrolled. Plaintiff now attempts to recast her academic failures and the resulting required withdrawal from her graduate program as national origin discrimination and retaliation under Title VII, Title VI, the NYSHRL, and 42 U.S.C. § 1981, wage violations under the NYLL and FLSA, and contract and quasi-contract claims. But the Complaint identifies only one allegation that could conceivably be connected to her national origin: an isolated comment that referred to India, rather than Canada, as her home country—a facially non-derogatory remark by a person whom Plaintiff does not allege served on or influenced the Academic Review Committee that required her withdrawal.

Dismissal of the Complaint is required for multiple independent reasons. *First*, Plaintiff's claims challenging Cornell's academic decisions are barred because she failed to timely commence an Article 78 proceeding, the exclusive vehicle for challenging university academic determinations, and she cannot evade Article 78's four-month statute of limitations by repackaging academic grievances as discrimination, retaliation, contract, or quasi-contract claims. *Second*, the discrimination claims fail because the Complaint is devoid of non-conclusory allegations connecting any decision to national origin: the alleged stray remark was made months before Plaintiff's withdrawal by a non-decisionmaker, while the Complaint's own allegations supply legitimate, nondiscriminatory explanations rooted in years of academic deficiency. *Third*,

the retaliation claims fail because temporal proximity alone cannot establish causation where Plaintiff was already demonstrably at risk of the adverse action before engaging in protected activity. *Fourth*, the wage claims are insufficiently pled. *Fifth*, the contract and quasi-contract claims identify no specific promise that Cornell allegedly breached, any monies owed to Plaintiff or wrongfully withheld by Cornell. The Complaint should therefore be dismissed in its entirety.

## FACTUAL BACKGROUND[1]

### A. Plaintiff's Enrollment and Academic Progress in the M.Arch. Program

Plaintiff, a Canadian citizen, matriculated in Cornell's Master of Architecture ("M.Arch.") program in Fall 2021. *Compl.* ¶ 5. In August 2021, Plaintiff submitted transfer-equivalency materials seeking academic credit for several prerequisite courses, including ARCH 5511, Constructive Drawing I. *Id.* ¶ 29. Plaintiff never received approval for this transfer of credits. Yet, she admits that she "never attended" the course in Fall 2021, resulting in a failing grade. *Id.* As a result of Plaintiff's poor academic performance, Plaintiff received Academic Warnings in both Fall 2021 and Fall 2022. *Id.* ¶ 57.

During Fall 2024, Plaintiff attended ARCH 5614, Building Technology I, for over two months before she "learned" that she was not enrolled in the course; instead, Plaintiff was enrolled in a different course, ARCH 5911 taught by Professor Leslie Lok ("Lok"). *Id.* ¶ 24. Plaintiff first attended ARCH 5911—the class in which she was actually enrolled—on November 1, 2024, nine weeks into the fourteen-week semester. *Id.* ¶ 25. On November 7, 2024, Lok informed Plaintiff that, because she had missed more than half of the semester, she could not

[1] These facts are based solely on the allegations Plaintiff alleged in her Complaint. They are taken as true for purposes of this motion only to the extent required by Federal Rule of Civil Procedure 12(b)(6). *Castagna-Esposito v. Chestnut*, No. 25-1894-cv, 2026 U.S. App. LEXIS 10225, at *3 (2d Cir. Apr. 9, 2026) (noting the requirement on a Rule 12(b)(6) motion to take as true facts alleged in a complaint and to draw all reasonable inferences in the plaintiff's favor).

earn a passing grade and recommended that Plaintiff withdraw from the course to avoid receiving a failing grade. *Id.* ¶ 27. Plaintiff does not allege that she took any steps to withdraw, nor does she allege that she successfully completed the course's academic requirements. Having only attended one class session and not completing the required work, Plaintiff failed ARCH 5911. *Id*. ¶¶ 27, 29.

In "[l]ate Fall 2024," Plaintiff enrolled in ARCH 8912, a Thesis course, for the Spring 2025 semester. *Compl*. ¶ 38. On January 10, 2025, two weeks before the start of the Spring 2025 semester, Plaintiff was administratively disenrolled from ARCH 8912 "on the ground that she had failed the prerequisite, ARCH 5911." *Id*. ¶ 39. Notwithstanding that she was not enrolled, Plaintiff began attending ARCH 8912, and "maintains that she did not learn of the drop until January 31, 2025." *Id*. By the time Plaintiff sought a replacement elective, faculty allegedly denied her petitions for late enrollment because the semester was too far along. *Id.* ¶ 40.

**B. Plaintiff's Immigration Status and Enrollment-Related Issues**

Because Plaintiff was dropped from ARCH 8912 and did not timely enroll in a replacement, she fell below the twelve-credit threshold for her F-1 status. *Id.* Cornell advised on February 14, 2025, that her F-1 record was closed; after meeting with administrators, Plaintiff's F-1 status was restored by March 3, 2025. *Compl*. ¶¶ 40–43.

**C. Plaintiff's Graduate Assistant Appointments and Related Payroll Complaints**

Along with her M.Arch. admissions offer, Plaintiff received Graduate Teaching Research Support (GTRS) positions for Fall 2024 and Spring 2025, each providing tuition support and an $8,483 stipend payable in semi-monthly installments. *Compl*. ¶ 21-22. Plaintiff alleges that her Fall 2024 paychecks were mailed to an incorrect New York City address and never received but does not allege that she reported the issue during that semester. *Id*. ¶ 36. On October 28, 2024,



24261449

Cornell awarded Plaintiff the same GTRS position for Spring 2025. *Id*. ¶ 22. Cornell instructed her on January 8, 2025, to complete an I-9 through Workday, but Plaintiff alleges the task was unavailable and did not report the technical issue until January 30, after she had begun working. *Compl*. ¶¶ 30–31.

Plaintiff first contacted Payroll on February 15, 2025; the Workday issues were resolved by February 19. *Id*. ¶¶ 33-34. She received a partial payment on February 28 and an on-demand check for the balance on March 5. *Id.* ¶¶ 35, 37.

After receiving the compensation allegedly owed, Plaintiff met with Kytomma and Pennell. She alleges that Kytomma denied withholding pay, called her "difficult," said she was not supposed to have been working that semester, and that both defendants told her, "in words of substance," to "drop it." *Compl.* ¶ 51.

**D. Plaintiff's February 24, 2025, Meeting with Defendant Kudva**

On February 24, 2025, Plaintiff met with Dr. Kudva and Jennifer Michael regarding her enrollment, wages, and visa. *Id.* ¶ 45. When Plaintiff said she could not travel home during February break because of her visa issues, Kudva allegedly stated, "February Break isn't long enough to travel to India." *Id.* After Plaintiff said she was from Toronto, Kudva responded, "India, Canada, I don't discriminate." *Id.* ¶ 46. Plaintiff also claimed the department was "blacklisting her," but that Kudva assured her that she would receive any unpaid wages in the upcoming days. *Id.* ¶ 47.

On March 28, 2025, Plaintiff filed a bias report with OIETIX concerning Dr. Kudva's statement. Cornell investigated, concluded that the comment was "not an extreme circumstance," and offered to arrange an apology. *Id.* ¶ 52.

**E. Plaintiff Fails to Pay her Spring 2025 Tuition**

In May 2025, Plaintiff had a past-due Spring 2025 tuition balance. Her request for a retroactive waiver was denied on May 23, and she paid $17,000 toward the balance on June 3 to avoid financial withdrawal. *Id.* ¶ 56.

**F. Plaintiff is Withdrawn from the M.Arch. Program**

On June 9, 2025, Cornell issued Plaintiff a Notice of Required Withdrawal from the M. Arch program due to poor academic performance. *Id.* ¶ 57. "The notice stated that the decision was unanimous, that [Plaintiff] was 'permanently prohibited' from continuing studies in the college, and that it rested on her academic record, including a stated Spring 2025 semester GPA of 1.750…" and referenced an "academic-warning history," including warnings issued in Fall 2021 and Fall 2022. *Compl.* ¶ 57. Plaintiff appealed on June 15; Cornell denied the appeal on June 24. *Compl.* ¶¶ 57, 59. Plaintiff does not allege that she sought Article 78 review.

**G. Plaintiff's Complaint**

Plaintiff filed an EEOC charge alleging national-origin discrimination and retaliation, and received a Notice of Rights to Sue letter, dated April 23, 2026. *Compl.* ¶¶ 16-18. In this action, Plaintiff asserts discrimination and retaliation claims under Title VII, Title VI, the NYSHRL, and 42 U.S.C. § 1981, as well as violations of the NYLL, the FLSA, and common law contract and quasi-contract claims.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). To survive a Rule 12(b)(6) motion, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations, citations, and alterations omitted).

## <u>POINT I</u>

## ANY CHALLENGE TO PLAINTIFF'S WITHDRAWAL IS UNTIMELY

Plaintiff cannot evade Article 78 of the New York C.P.L.R. by repackaging her disagreement with Cornell's academic determinations as contract, quasi-contract, discrimination, or retaliation claims. Her First through Seventh, Tenth, and Eleventh Causes of Action principally challenge her required withdrawal, the associated loss of her GTRS position, and the academic decisions leading to them. Any such challenge had to be brought within four months of Cornell's determination, but no timely Article 78 proceeding was commenced.

Disputes over grading, academic standing, dismissal, and satisfaction of program requirements fall squarely within the province of Article 78. *Ansari v. N.Y. Univ.*, 1997 U.S. Dist. LEXIS 6863, at *5 (S.D.N.Y. May 16, 1997); *Meisner v. Hamilton, Fulton, Montgomery Bd. of Coop. Educ. Servs.*, 175 A.D.3d 1653 (3d Dept. 2019); *Grogan v. Saint Bonaventure University*, 91 A.D.2d 855, 855 (4th Dept. 1982) (citing *Tedeshi v. Wagner College*, 49 N.Y.2d 652, 658 (1980)). Academic institutions are better suited to make final decisions on internal academic matters, making Article 78 the appropriate vehicle for such controversies. *Chai v. N.Y. Univ.,* 2024 U.S. Dist. LEXIS 160094, at *16-17 (S.D.N.Y. Sept. 4, 2024) (quoting *Maas v. Cornell*, 94 N.Y.2d 87, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999)). "As such, 'when litigants fail to avail themselves of [Article 78], courts may justifiably dismiss plenary claims premised upon alleged failures to follow applicable principles set forth in [university] handbooks.'" *Id.*

Courts likewise reject efforts to evade Article 78 by labeling academic disputes as contract, tort, or discrimination claims. *Doe v. Columbia Univ.,* 2020 U.S. Dist. LEXIS 56233, *12 (S.D.N.Y. Mar. 31, 2020) ("Since Columbia's authority to expel a student based on an *academic violation,* is clearly stated, Doe's claim that Columbia's decision to deny him a degree was based on purely financial considerations is merely an attempt to couch this challenge in terms of 'contract' to avoid Article 78's statute of limitations."); *Demas v. Levitsky*, 291 A.D.2d 653, 660 (3d Dept. 2002) (dismissing breach of contract and negligence claims filed outside of the four-month statute of limitations period as untimely because "[a]lthough couched in terms of 'contract' and 'tort' to avoid the applicable statute of limitations, the claims are directed at Cornell's academic and administrative decision to reject plaintiff's administrative charges against [a university professor], which may be reviewed only in an Article 78 proceeding" (citations omitted)); *Zonshayn v. Sackler Sch. of Med.,* 648 F. Supp. 3d 485, 498 (S.D.N.Y. 2023); *Alrqiq v New York Univ*., 127 A.D.3d 674, 674-675 (1st Dept. 2015) (discrimination claim challenging a university's academic and administrative decision barred by Article 78's four-month limitations period).

Here, Plaintiff challenges academic determinations made over her four years in the M.Arch. program, culminating in the June 9, 2025, required withdrawal and loss of her GTRS position. She alleges errors in the application of transfer-credit equivalency and attendance and grading policies, a variety of incredible enrollment mishaps that led her to attend classes in which she was not enrolled (*twice in two semesters*), and her disagreement with Cornell's withdrawal decision. *See Compl.* ¶¶ 29, 57, 59, 69.

Any Article 78 challenge to academic determinations that arose at the outset of her enrollment at Cornell in 2021 or that followed in 2022 or 2024 was time-barred years before this

action was commenced. And any challenge to the required withdrawal decision was due by October 24, 2025 (i.e., four months after the decision on Plaintiff's appeal) pursuant to CPLR § 217.

Plaintiff cannot revive that expired period by characterizing her academic withdrawal as national origin discrimination. The *only* allegation remotely related to national origin is Kudva's February 24, 2025, comment; Plaintiff does not allege that Kudva served on or influenced the Academic Review Committee, and the comment post-dated years of academic difficulties. It therefore cannot convert the time-barred academic challenge into a timely plenary claim. *See Alrqiq*, 127 A.D.3d at 674-675 (affirming dismissal of discrimination complaint arising out of the plaintiff's non-admission to NYU's Orthodontics Residency Program; holding "[a]lthough 'couched in terms of unlawful discrimination,' the complaint is a 'challenge to a university's academic and administrative decision[] and thus is barred by the four-month statute of limitations for a CPLR article 78 proceeding, the appropriate vehicle for such a challenge" (quoting *Padiyar v. Albert Einstein Coll. of Medicine of Yeshiva Univ.*, 73 A.D.3d 634, 635 (1st Dept. 2010)). Thus, Plaintiff's First through Seventh, Tenth and Eleventh Causes of Action must be dismissed.

## <u>POINT II</u>

## PLAINTIFF FAILS TO PLAUSIBLY ALLEGE TITLE VII DISCRIMINATION OR RETALIATION

### A. Plaintiff's Title VII Discrimination Claim Must Be Dismissed

Plaintiff's First Cause of Action alleges that Cornell discriminated against her based on actual Canadian or perceived Indian national origin through alleged wage delays, denial of administrative support, Kudva's statement, and the June 9, 2025, Notice of Required Withdrawal. *Compl.* ¶ 64. Each theory fails.

***1. The Majority of the Alleged Discriminatory Acts Are Time-Barred***

Title VII requires a plaintiff in New York to file a charge of discrimination with the EEOC within 300 days of the allegedly discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *Schwetz v. Bd. of Coop. Educ. Servs. of Nassau Cnty.*, 2026 U.S. App. LEXIS 5057, at *2 (2d Cir. Feb. 20, 2026) (summary order). The 300-day limitations period begins running on the day each act "happened." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *King v. Aramark Servs.,* 96 F.4th 546, 559 (2d Cir. 2024) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015)).

Plaintiff filed her EEOC Charge on April 3, 2026. *Compl.* ¶ 16. Accordingly, only conduct occurring on or after June 7, 2025, falls within the 300-day limitations period. The following discrete acts on which Plaintiff predicates her discrimination claim occurred outside this period, and any discrimination claim premised thereon is therefore time-barred:

- The purported withholding and delayed payment of wages during January and February 2025 (*see Compl.* ¶¶ 30–37);
- The alleged denial of "administrative support" related to those wage complaints in the same period (*see id.* ¶¶ 38–44);
- Defendant Kudva's February 24, 2025, statement (*see id.* ¶¶ 45–46).

***2. Plaintiff's Academic Withdrawal Is Not an Adverse Employment Action***

The only alleged act within the 300-day limitations period is the June 9, 2025, Notice of Required Withdrawal. Title VII provides a cause of action only for "unlawful employment practice[s]," 42 U.S.C. § 2000e-2(a), and does not afford protection to students challenging academic decisions concerning their educational status, even where the academic decision arguably has a "tangential effect on [a graduate student's] status as an employee." *Bucklen v. Rensselaer Polytechnic Inst.*, 166 F. Supp. 2d 721, 725 (N.D.N.Y. 2001); *Weiss v. City Univ. of N.Y.*, 2019 U.S. Dist. LEXIS 43869, at *28 (S.D.N.Y. Mar. 18, 2019) ("Title VII relates to

'unlawful employment practice[s],' 42 U.S.C. § 2000e-2(a), and does not afford protection to students alleging discrimination in their education where the claimed discrimination concerned the individual's role as a student.").

Plaintiff's complaints concern her academic performance and standing, not an employment decision. By Plaintiff's own allegations, the Academic Review Committee required her withdrawal based on "her academic record, including a stated Spring 2025 semester GPA of 1.750," and previous academic warnings in 2021 and 2022. *Compl.* ¶ 57. Any tangential effect on her teaching assistantship does not transform that academic determination into a Title VII employment action. *Bucklen*, 166 F. Supp. 2d at 725.

***3. The Complaint Fails to Plausibly Allege National Origin Discrimination***

Even if timely and actionable, Plaintiff must plausibly allege that national origin was a motivating factor in an adverse employment action. *McNeill v. Off. of Child. & Fam. Servs.*, 2026 U.S. Dist. LEXIS 61558, at *14 (N.D.N.Y. Mar. 24, 2026) (quoting *Vega*, 801 F.3d at 87 (2d Cir. 2015)). A Title VII discrimination complaint must allege nonconclusory facts making discrimination plausible. *Laporte v. Sullivan*, 801 F. Supp. 3d 98, 102 (N.D.N.Y. 2025) (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's Complaint is entirely devoid of factual allegations supporting a plausible inference that Cornell acted with discriminatory animus toward Plaintiff. Instead, it alleges years of unrelated academic, enrollment, payroll, visa, and withdrawal disputes, but no facts connecting any decision to national origin. The Complaint is, at bottom, "little more than plaintiff's grade dispute dressed up as a civil rights action." *Williams v. City Univ. of New York*,

2014 U.S. Dist. LEXIS 118782, at *25–26 (E.D.N.Y. Feb. 7, 2014) (dismissing a graduate student's discrimination claims arising from academic performance and enrollment issues).

The only national-origin allegation is Kudva's February 24, 2025, exchange: "February Break isn't long enough to travel to India" and, after Plaintiff said she was from Toronto, "India, Canada, I don't discriminate." *Compl*. ¶¶ 45–46.[2] The probative value of a remark turns on the speaker, timing, content, and context. *Cherry v. New York City Hous. Auth.*, 564 F. Supp. 3d 140 (E.D.N.Y. 2021) (citing Wanamaker v. Westport Bd. of Educ., 899 F. Supp. 2d 193, 208 (D. Conn. 2012)); *Rajaravivarma v. Bd. of Trs. for the Conn. State Univ. Sys.*, 862 F. Supp. 2d 127 (D. Conn. 2012). Each factor defeats an inference of discriminatory intent here.

- *The speaker*: The Complaint does not contain any nonconclusory allegation that Kudva served on or influenced the Academic Review Committee. Remarks by someone other than the decisionmaker have little tendency to show discriminatory motivation. *Tomassi* v. Insignia Fin. Group, Inc., 478 F.3d 111, 115 (2007).

- *The timing*: The remark occurred more than three months before the June 9 withdrawal (and years after Plaintiff's poor academic performance became evident), weakening any inference of a causal nexus.

- *The content*: The remark reflects, at most, a mistaken assumption immediately corrected by a facially non-derogatory statement. A stray remark, even by a decisionmaker, is insufficient without more. *Fletcher v. ABM Building Value*, 775 F. App'x 9, 13 (2d Cir. 2019) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998)).

---

[2] As discussed above, any claim arising out of this singular comment is time-barred, and the Court need not proceed beyond Point II.A.1. to dismiss Plaintiff's discrimination claims.

- *The context*: The comment arose during a meeting about payroll and visa issues, not academic standing or withdrawal.

The alleged remark is precisely the type of "'conclusory, isolated, and unspecified statement[]'" that "'cannot provide a rational basis for inferring discriminatory intent or motivation.'" *Salem v. N.Y. Univ.*, 2023 U.S. Dist. LEXIS 166010, at *19 (S.D.N.Y. Sept. 15, 2023) (dismissing student's national origin discrimination claim where plaintiff failed to plausibly allege that a dean's statement identifying him as Iranian bore any connection to alleged mistreatment).

Further, the Complaint also does not allege that Kytomaa, Pennell, or Lok knew Plaintiff was Canadian or perceived her to be Indian. A discrimination claim requires the decisionmaker's personal awareness of the protected status. *Brown v. Montefiore Med. Ctr.*, 2023 U.S. Dist. LEXIS 128952, at *38 (S.D.N.Y. July 25, 2023) ("Under Second Circuit law, a plaintiff alleging discrimination on account of [her] protected status must offer evidence that a decision-maker was personally aware of [her] protected status to establish a prima facie case of discrimination.").

The Complaint instead supplies legitimate, nondiscriminatory explanations for the grievances Plaintiff advances: Plaintiff failed prerequisites, attended courses in which she was not enrolled, failed to attend a course in which she was enrolled and did not withdraw as suggested leading to a failing grade, received repeated warnings, earned a 1.750 Spring 2025 GPA, and delayed completing her I-9 until after beginning GTRS work. *Compl.* ¶¶ 24, 29, 31–32, 39, 57. The required withdrawal from the M.Arch. program followed years of documented academic difficulties, not national origin animus.

Thus, when stripped of conclusory assertions, Plaintiff's discrimination theory is nothing more than the "classic false syllogism" consistently rejected by courts: "I am (fill in the protected

class of which the plaintiff is a member); something bad happened to me . . . ; therefore the bad thing happened because I am (fill in the protected class)." *Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 129 (N.D.N.Y. 2019) (collecting cases). The Title VII discrimination claim should therefore be dismissed.

### B. Plaintiff's Title VII Hostile Work Environment Claim Fails as a Matter of Law

A hostile work environment claim under Title VII requires conduct severe or pervasive enough to alter employment conditions, either through one extraordinarily severe incident or a continuous and concerted series, and the conduct must occur because of the protected characteristic. *Banks v. GM, LLC*, 81 F.4th 242, 262 (2d Cir. 2023) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *Desardouin v. City of Rochester*, 708 F.3d 102 (2d Cir. 2013) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000)); *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997). Plaintiff's hostile work environment claim fails both requirements.

*First*, the claim is time-barred. The alleged wage, administrative, and Kudva-related remark occurred outside the 300-day period, while the only timely act (the required withdrawal) is not an employment action and cannot serve as a hostile-environment predicate. *Second*, the allegations do not approach the severe or pervasive standard. Academic and payroll disputes plus one mistaken, non-derogatory comment do not permeate the workplace with discriminatory intimidation or insult. *Matthew v. JPMorgan Chase Bank, N.A.*, 2026 U.S. App. LEXIS 19005, at *6 n.4 (2d Cir. June 30, 2026) (affirming dismissal of hostile work environment claim where the plaintiff alleged that her supervisor *repeatedly* stated he could not understand her because of her Trinidadian accent). "Isolated incidents of harassment ordinarily do not rise to this level." *Cruz*, 202 F.3d at 570; *Knox v. CRC Mgmt. Co., LLC*, 134 F.4th 39 (2d Cir. 2025) (quoting

*Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)). The isolated comment alleged here was not extraordinarily severe, and the remaining allegations are facially race-neutral.

**C. Plaintiff's Title VII Retaliation Claim Must Be Dismissed[3]**

Plaintiff's Second Cause of Action alleges that Cornell took materially adverse action after her February and March 2025 protected activity. *Compl.* ¶¶ 67–71. A Title VII retaliation claim requires an adverse action taken after the employer learned of protected conduct and a causal connection between the two. *Brooks v. Bright Horizons Fam. Sols., Inc.*, 2026 U.S. App. LEXIS 16561, at *10 (2d Cir. June 9, 2026) (citation omitted). Where an educational institution enforces facially neutral academic standards, the plaintiff must plead particularized circumstances, such as statements by decisionmakers, university officials, or patterns of decision-making, linking the outcome to discriminatory bias. *See Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 251 (2d Cir. 1995).

Plaintiff's retaliation claims rely principally on proximity between her February and March complaints and the June 9 withdrawal, but her own allegations defeat that inference. The Committee relied on a documented record of failing grades, academic warnings beginning years before any protected activity, and a 1.750 Spring 2025 GPA. *Compl.* ¶ 57. Those academic difficulties long predated Plaintiff's complaints. *Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219,

---

[3] Courts analyze Section 1981 retaliation claims under the same legal principles as Title VII retaliation claims. *Perry v. Weill Cornell Med. Coll.*, 2026 U.S. Dist. LEXIS 177497, at *9 (S.D.N.Y. Aug. 10, 2026) (citing cases). Likewise, retaliation claims under Title VI require a "plaintiff to 'allege that [she] engaged in protected activity, [Defendant] knew about [her] protected activity, [she] suffered an adverse action, and there was a causal connection between the protected activity and the adverse action.'" *Badr v. N.Y.I.T.,* 2025 U.S. Dist. LEXIS 256055, at *16 (E.D.N.Y. Dec. 10, 2025) (citations omitted), *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 70249 (E.D.N.Y. Mar. 31, 2026). Plaintiff pleads no additional or different facts supporting her Section 1981 or Title VI retaliation claims apart from those underlying her Title VII retaliation claim. Accordingly, for the same reasons as discussed in this Point I.C., Plaintiff's retaliation claims must be dismissed.

247 (S.D.N.Y. 2020); *Stanley v. City Univ. of N.Y.*, 2023 U.S. Dist. LEXIS 55745, at *44 (S.D.N.Y. Mar. 30, 2023) ("Generally speaking, recent case law suggests that a period no longer than two months permits an inference of causal connection."). Thus, temporal proximity alone cannot overcome the Complaint's own demonstration that Cornell's enforcement of its academic standards was consistent with, and driven by, the same pattern of Plaintiff's unsatisfactory performance that had triggered warnings for years. *Williams*, 2014 U.S. Dist. LEXIS 118782, at *37 (quoting *Catanzaro v. City of New York*, 2011 U.S. Dist. LEXIS 9623, at *20-21 (S.D.N.Y. Jan. 25, 2011) (close temporal proximity cannot plausibly support an inference of retaliation where, as here, a plaintiff is already "demonstrably at risk" of the allegedly adverse action before engaging in protected activity)); *Salem*, 2023 U.S. Dist. LEXIS 166010, at *23 (finding no indirect evidence of retaliatory intent where a university dean's statement was a "curtly worded restatement" of an academic decision that predated the plaintiff's discrimination complaint); *Badr*, 2025 U.S. Dist. LEXIS 256055, at *18 (dismissing college student's retaliation claims where the complaint "contain[ed] no support for allegations of temporal proximity, disparate treatment, or any direct evidence of retaliatory animus.")

The Complaint alleges no particular circumstance connecting the required withdrawal to Plaintiff's bias report: no allegation that committee members knew of it, made retaliatory statements, selectively enforced standards, or departed from ordinary procedures. The Committee reviewed the academic record and issued its decision pursuant to institutional policies and procedures, including an internal appeal. *See Murray*, 57 F.3d at 251 (no inference where the complaint did not allege selective enforcement or inconsistency with academic standards). For these reasons, the Title VII retaliation claim should be dismissed.

## POINT III

## PLAINTIFF'S TITLE VI DISCRIMINATION CLAIMS MUST BE DISMISSED

In her Third Cause of Action, Plaintiff alleges that Cornell discriminated against her on the basis of her "actual and perceived national origin" and was deliberately indifferent to discrimination of which it had actual knowledge in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"). *Compl.* ¶ 74. Title VI prohibits exclusion from or discrimination under federally funded programs on the basis of race, color, or national origin. 42 U.S.C. § 2000d. To state a claim under Title VI, a plaintiff must plausibly allege intentional discrimination in which national origin was a substantial or motivating factor. *Tolbert v. Queens College*, 242 F.3d 58, 69 (2d Cir. 2001). The Complaint satisfies none of these requirements.

### A. The Complaint Lacks Non-Conclusory Allegation of Intentional Discrimination

Plaintiff's Title VI claim fails for the same fundamental reason as her Title VII claim: the Complaint is devoid of non-conclusory factual allegations plausibly suggesting that any academic or administrative decision was motivated by Plaintiff's actual Canadian national origin or her allegedly perceived Indian national origin. *See* Point II.A.3, *supra; Badr*, 2025 U.S. Dist. LEXIS 256055, at *12 ("[p]laintiff's speculation that disciplinary decisions stemmed from discriminatory animus, rather than legitimate academic or professional considerations, is insufficient," notwithstanding allegations that a faculty member told the plaintiff to "return to Egypt"); *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 110 (2d Cir. 2022) (affirming dismissal of a Title VI claim where the allegations did not show that the decisionmaker harbored national-origin bias). Stripped of conclusory labels, the Complaint alleges nothing more than a series of academic and administrative decisions, none of which Plaintiff connects to her national origin through any factual allegation, rather than bare assertion.

**B. Plaintiff's Disparate Treatment Theory Fails**

"To show an inference of discrimination based upon disparate treatment, Plaintiffs must plausibly allege 'a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases,' such that 'the comparator must be similarly situated to the plaintiff in all material respects.'" *Minto v. Molloy Coll.*, 2021 U.S. Dist. LEXIS 12516, *27–28 (E.D.N.Y. Jan. 21, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 40370 (E.D.N.Y. March 3, 2021) (quoting *Vives v. New York City Dep't of Corr*., 2019 U.S. Dist. LEXIS 51913 (E.D.N.Y. Mar. 27, 2019)). Plaintiff's sole comparator allegation (that Lok did not enforce attendance equally against students outside Plaintiff's national origin) is made *on information and belief*. *Compl.* ¶ 28. And Plaintiff does not allege that Lok even knew her national origin, let alone that of the comparators, or that they attended the course for the first and only time after nine of the fourteen-week semester had passed. Without those facts, no inference of disparate treatment is plausible.

**C. Plaintiff's Deliberate Indifference Theory Fails**

To establish deliberate indifference, Plaintiff must show that Cornell intentionally violated Title VI by responding to known discrimination in a manner clearly unreasonable in light of the circumstances. *White v. New Sch.*, 2026 U.S. Dist. LEXIS 155983, *23-24 (S.D.N.Y. July 14, 2026).

Plaintiff's allegations defeat this theory: Cornell opened an OIETIX investigation within days of the bias report, and Plaintiff alleges only concerns or perceived failures with that investigative process. *Compl.* ¶ 52. This cannot establish there was an unreasonable response to the complaint. *White*, 2026 U.S. Dist. LEXIS 155983, at *26 ("Plaintiff's dissatisfaction with the result of the grievance process [does not] support his conclusion that [the college's] conduct was clearly

unreasonable . . . ."); *Doe v. Trs. of Colum. Univ.*, 2022 U.S. Dist. LEXIS 153239, *40 (S.D.N.Y. Aug. 25, 2022).

* * *

For all of the foregoing reasons, Plaintiff has failed to plausibly allege a claim under Title VI. Her Third Cause of Action should be dismissed in its entirety.

## POINT IV

## PLAINTIFF'S SECTION 1981 DISCRIMINATION CLAIM FAILS

Plaintiff's Twelfth Cause of Action invokes 42 U.S.C. § 1981 based on alleged discrimination involving her perceived South Asian ethnicity and ancestry. *Compl.* ¶¶ 106-110. As a threshold matter, Section 1981 does not prohibit national origin discrimination; it prohibits discrimination based on race or ethnicity. Thus, to the extent Plaintiff's claim rests on allegations concerning her actual or perceived nationality, it fails as a matter of law. *Village of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016) ("Section 1981 prohibits discrimination on the basis of race but not on the basis of national origin.").

Even construed as an ethnic or racial claim, Section 1981 requires allegations of membership in a racial minority, intentional racial discrimination, interference with a statutory activity, and but-for causation. 42 U.S.C. § 1981; *Alameda v. Ass'n of Soc. Work Bds*., 2024 U.S. Dist. LEXIS 175886, *14 (S.D.N.Y. Sept. 25, 2024). Critically, Section 1981 demands more than the motivating-factor standard applicable to Title VII: "[P]laintiff has the burden of showing, at every stage of the proceedings, that the plaintiff's race was a 'but for' cause of any alleged injury." *Id.* (citation omitted). Plaintiff cannot meet that heightened standard. The Complaint alleges no nonconclusory fact showing that Cornell acted *because of* South Asian ethnicity or ancestry; instead, it attributes the withdrawal to years of academic deficiencies.

*Compl.* ¶¶ 24, 29, 39, 57. Kudva's isolated, non-derogatory remark is not connected to any academic decision and cannot establish but-for causation. *See* Points II(A) and II(B), *supra.* Accordingly, Plaintiff's Section 1981 discrimination claim must be dismissed. *Annabi*, 2023 U.S. Dist. LEXIS 176661, at *65 (conclusory allegations of discriminatory intent do not state a § 1981 claim).[4]

**<u>POINT V</u>**

**PLAINTIFF'S NYSHRL CLAIMS MUST BE DISMISSED**

**A. Plaintiff Fails to Satisfy Even the NYSHRL's More Lenient Standard**

Plaintiff's Fourth and Fifth Causes of Action assert national origin discrimination under NYSHRL §§ 296(1)(a) and 296(4). To state a discrimination claim under the NYSHRL, Plaintiff must allege that she was treated less well because of a protected characteristic and that discrimination played a role in the decision. *Alston v. Mhany Mgmt.*, 2026 U.S. Dist. LEXIS 208441, *16 (S.D.N.Y. Sept. 15, 2026). While the NYSHRL does not require the same showing as its Title VII counterpart, a plaintiff must still demonstrate "that discrimination played a role in the employer's decision-making." *Brown v. Montefiore Med. Ctr.*, 2021 U.S. Dist. LEXIS 57179, at *25 (S.D.N.Y. Mar. 25, 2021).

For the reasons set out in Point II, the Complaint does not plausibly allege that any academic, administrative, or employment decision was motivated, in any way, by Plaintiff's actual or perceived national origin. Nor does it identify a similarly situated comparator who was treated better. Plaintiff identifies no GTRS comparator at all. And her only academic comparator allegation is that Lok treated students outside Plaintiff's national origin differently, but Plaintiff

[4] Plaintiff also asserts a Section 1981 retaliation claim. Such claims are evaluated under the same standards as Title VII retaliation claims. Accordingly, Plaintiff's Section 1981 retaliation claim should be dismissed for the same reasons as discussed in Point I.C.

does not allege that those students' attendance resembled her circumstances. The Fourth and Fifth Causes of Action should therefore be dismissed.

### B. Plaintiff's Sixth Cause of Action Alleging Retaliation under the NYSHRL Fails

Although NYSHRL retaliation claims are subject to a more lenient standard than their federal counterparts, a plaintiff must still plausibly allege that the defendant "engaged in conduct that was reasonably likely to deter a person from engaging in protected activity" and that the defendant was motivated "at least in part by an impermissible motive." *Burgess v. New Sch. Univ*., 2024 U.S. Dist. LEXIS 163306, *42 (S.D.N.Y. Sept. 11, 2024).

Even under this more lenient standard, Plaintiff's Sixth Cause of Action fails. As discussed in Point II.C., the Complaint relies almost entirely on temporal proximity between Plaintiff's February and March 2025 complaints and the June 9, 2025, Notice of Required Withdrawal. But temporal proximity alone cannot establish the requisite causal connection where, as here, the Complaint's own allegations demonstrate that the allegedly adverse action was driven by legitimate, nondiscriminatory considerations that long predated any protected activity. Plaintiff pleads no facts suggesting retaliatory motive. The Committee reviewed her academic record and issued its decision pursuant to established policies, including an internal appeal process that Plaintiff utilized and that likewise resulted in an adverse determination. Nor can Kudva's isolated February 24, 2025, remark, which the Complaint does not allege influenced or was even known to the Committee, supply the retaliatory animus that Plaintiff's own factual allegations negate. Because the Complaint fails to plausibly allege that any defendant was motivated, even in part, by an impermissible retaliatory motive, the Sixth Cause of Action should be dismissed.

### C. Plaintiff's NYSHRL § 296(6) Aiding and Abetting Claim Fails Because There Is No Predicate Violation

Plaintiff's Seventh Cause of Action asserts aiding and abetting liability against the Individual Defendants under NYSHRL § 296(6), which prohibits aiding, abetting, inciting, compelling, or coercing acts forbidden by the NYSHRL. *Lorelli v. Woodlands Apt. Corp.*, 2026 U.S. Dist. LEXIS 109414, *30 (E.D.N.Y. Mar. 31, 2026). This aiding and abetting claim, however, is wholly derivative: "[a]n underlying claim for discrimination or retaliation is a 'precondition to a valid aiding and abetting claim under the NYSHRL.'" *Hamilton v. Siemens Healthcare Diagnostics, Inc.*, 2026 U.S. Dist. LEXIS 73983, *47 (S.D.N.Y. Mar. 31, 2026). Because the Complaint pleads neither, the § 296(6) claim necessarily fails.

## POINT VI

## PLAINTIFF'S WAGE-RELATED CLAIMS ARE INSUFFICIENTLY PLED

### A. Plaintiff's NYLL Untimely Payment Claims Should Be Dismissed

Plaintiff's Eighth Cause of Action alleges untimely payment of wages under NYLL §§ 191 and 198, based on delayed Fall 2024 and Spring 2025 wages. *Compl*. ¶¶ 90-93. NYLL § 191 specifies payment frequency for defined categories of workers, and Section 198 supplies a remedial scheme and does not create an independent obligation. *Pachter v. Bernard Hodes Group, Inc*., 505 F.3d 129, 132 (2d. Cir. 2007); *Marshall ex rel. All Others v. UBS Fin. Servs*., 2015 U.S. Dist. LEXIS 88048, *11 (S.D.N.Y. July 6, 2015).

Plaintiff's Eighth Cause of Action vaguely alleges that Plaintiff was an "employee" and that "Cornell failed to pay Plaintiff's wages within the time required by NYLL § 191." *Compl.* ¶¶ 91-92. But Section 191 does not apply to all "employees." Rather, it applies only to specific categories of workers, including "manual workers," "railroad workers," "commission salespersons," and "clerical and other workers" (NYLL § 191(a)-(d))—not graduate student

research or teaching assistants—and the required pay frequency varies by category. Plaintiff does not allege which category applies, rendering her Section 191 claim wholly insufficient. *Paribello v. Osaic*, *Inc*., 2026 N.Y. Misc. LEXIS 3843, *16 (Sup. Ct. N.Y. Cnty. Apr. 14, 2026) ("The Court of Appeals has likewise explained that the statute is intended to ensure prompt payment of wages to employees within defined statutory categories and does not serve as a general vehicle for litigating compensation disputes.")

**B. Plaintiff's FLSA Untimely Payments Claims Must Be Dismissed**

Plaintiff's Ninth claim alleges a violation of FLSA § 206. The FLSA requires payment in a timely fashion, assessed objectively by considering not only how often late payments were made or how late they were, but also whether the payments were made as soon as practicable under the circumstances. *Rogers v. City of Troy*, 148 F.3d 52, 55, 57 (2d Cir. 1998); *Beardsley v. Cnty. of Saratoga*, 2026 U.S. Dist. LEXIS 20756, *31 (N.D.N.Y. Mar. 30, 2026).

Plaintiff's own allegations foreclose any plausible FLSA prompt-payment claim. Plaintiff acknowledges that she did not complete the I-9 onboarding process until January 30, 2025, eight days after beginning work, and that any resulting payroll issue was resolved through an "on-demand check" within three days after she raised the issue. *Compl.* ¶¶ 31, 37. As to Fall 2024, she alleges only nonreceipt of checks, not failure to issue them, and did not raise the issue until months later. These allegations show a brief, corrected delay, not a plausible FLSA violation.

**C. Plaintiff's NYLL and FLSA Retaliation Claims Must Be Dismissed**

Plaintiff's Ninth and Thirteenth Causes of Action allege that Defendants violated the FLSA and NYLL's anti-retaliation provisions because, after her March 2, 2025, wage complaint, Cornell denied her employment status on March 27, 2025, and required her to withdraw on June 9, 2025. *Compl.* ¶¶ 96, 112-113.

The FLSA (29 U.S.C. § 215(a)(3)) prohibits discharge or discrimination because an employee files a wage complaint. NYLL § 215(a)(1) similarly prohibits discharge, threats, penalties, or discrimination in response to a good-faith complaint. To state retaliation claims under the FLSA and NYLL, "a plaintiff must plead: (1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 420 (S.D.N.Y. May 23, 2017). Plaintiff's claims are predicated on Pennell's alleged March 27, 2025, statement that Plaintiff "was not supposed to work [that] semester." *Compl.* ¶ 51. Even accepting that allegation as true, Plaintiff does not allege that this comment resulted in her removal from her GTRS position or otherwise affected the "terms and conditions" of her employment as a teaching assistant.[5] Accordingly, the Ninth and Thirteenth Causes of Action must be dismissed.

**POINT VII**

**PLAINTIFF'S CONTRACT AND QUASI-CONTRACT CLAIMS MUST BE DISMISSED**

Plaintiff's Tenth Cause of Action alleges that Cornell breached a contract by failing to timely pay GTRS compensation, departing from grading and attendance policies, mishandling enrollment and equivalency procedures, and requiring her withdrawal. *Compl.* ¶¶ 98-102.

"[O]nly specific promises set forth in a school's bulletins, circulars and handbooks, which are material to the student's relationship with the school, can establish the existence of an implied contract." *Croce v. St. Joseph's Coll.*, 219 A.D.3d 693, 695 (4th Dept. 2023) (quoting

[5] Like her Title VII retaliation claim, Plaintiff relies on temporal proximity in her FLSA and NYLL retaliation claims. But as discussed in Point II.C., temporal proximity alone is insufficient, and, even if it were, the required withdrawal was issued three months after Plaintiff's March 2, 2025, wage concern. *See Smith v. N.Y. & Presbyterian Hosp.,* 440 F. Supp. 3d 303, 343 (S.D.N.Y. 2020) (collecting cases and finding gap of three months insufficient).

*Keefe v. New York Law Sch.*, 71 A.D.3d 569, 570 (1st Dept. 2010)). Plaintiff alleges only that she was "entitled to" her GTRS position and to compliance with unidentified grading, grievance and academic policies. *Compl.* ¶ 99. She does not identify a single, specific promise that was allegedly breached by Cornell. *Croce*, 219 A.D.3d at 696 (dismissing breach of contract claim where the student alleged statements that were "too vague to constitute a specific promise to provide the plaintiff with" the claimed learning modality); *Doe v. Syracuse Univ.,* 440 F.Supp.3d 158, 175 (N.D.N.Y. 2020) (To "state a claim for breach of [a student-university] contract, a student must identify specifically designated and discrete promises. General policy statements and broad and unspecified procedures and guidelines will not suffice." (internal citations and quotation marks omitted).

Plaintiff alternatively asserts an Eleventh Cause of Action for unjust enrichment, quantum meruit, and money had and received. *Compl.* ¶¶ 103-05. But Plaintiff's quasi-contract claims fail because they are duplicative of her contract claim. *Croce v. St. Joseph's Coll.*, 73 Misc. 3d at 641 (Sup. Ct. Suffolk Cnty. 2021) (unjust enrichment claim pled "in the alternative" was "duplicative of the claims asserted in connection with the breach of contract claim"). Further, the Complaint does not plausibly allege that Cornell retained any benefit belonging to Plaintiff under circumstances that would make its retention inequitable. "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." *Yalincak v. N.Y. Univ*., 2009 U.S. Dist. LEXIS 143913, *43-44 (D. Conn. Sept. 2, 2009). A claim for money had and received is "essentially identical to a claim for unjust enrichment." *Rynasko v. N.Y. Univ*., 63 F.4th 186, 201 (2d Cir. 2023); *Snyder v. Bronfman*, 13 N.Y.3d 504, 508 (2009)

("Unjust enrichment and quantum meruit are ... essentially identical claims, and both are claims under 'a contract implied in law to pay reasonable compensation'")

Plaintiff's conclusory assertion that Cornell was enriched at her expense is belied by the Complaint: she admits that Cornell paid all compensation owed (*Compl.* ¶ 37) and that her tuition payment satisfied an *existing* balance (*Compl.* ¶ 56). Such allegations cannot support a claim that Cornell retained a windfall. *Yalincak,* 2009 U.S. Dist. LEXIS 143913 at *45 ("Plaintiff received the educational benefit of his tuition payments when he took classes at NYU during his five years there, and NYU was not unjustly enriched by virtue of Plaintiff's failure to earn a degree. Furthermore, it is clear that 'equity and good conscience' do not require restitution in this situation"). Accordingly, Plaintiff's quasi-contract Causes of Action must be dismissed.

## **CONCLUSION**

Plaintiff's claims are nothing more than a transparent attempt to relitigate an academic outcome she dislikes through causes of action that find no support in the facts alleged. Because the Complaint is procedurally barred, factually unsupported, and legally deficient in every respect, it should be dismissed in its entirety and with prejudice.

Dated: October 5, 2026

BOND, SCHOENECK & KING, PLLC

By: *\/s/Suzanne M. Messer*
Suzanne M. Messer, Esq.
Jacqueline E. Zahn, Esq.
One Lincoln Center
Syracuse, New York 13202-1355
Telephone: (315) 218-8628
Email: smesser@bsk.com
Email: jzahn@bsk.com

*Attorneys for Defendants*